## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY LEBOEUF, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, and EDGEWELL PERSONAL CARE, LLC,<br><br>        Defendants. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>  1:22-cv-00642 (MAD/DJS) |

Plaintiff Nancy Leboeuf ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action based upon personal knowledge as to herself and her own acts, and as to all other matters, based upon, *inter alia*, the investigation of her attorneys.

### NATURE OF THE ACTION

1.      Defendant Edgewell Personal Care Company is a Missouri corporation. Defendants Edgewell Personal Care Brands, LLC, and Edgewell Personal Care, LLC are both Delaware limited liability companies.  All three Defendants are headquartered in Shelton, Connecticut.

2.      Defendants and its agents manufacture, market, distribute, label, promote, advertise and sell "Wet Ones Antibacterial Hand Wipes" in various sizes, scents and other variations (collectively, the "Products").  The active ingredient in Defendants' Products is 0.13% Benzalkonium Chloride ("BAC").  On the label of its Products, Defendants include a statement that the product "Kills 99.99% of Germs."

3.      These statements, in that they are made with a degree of certainty to the hundredth digit, necessarily imply that a scientific study proves that Defendants' Products in fact kills 99.99% of germs.

4.      However, it is scientifically proven that BAC, at the concentrations offered in the Products, does not kill the vast majority of all germs.  BAC's disinfectant properties work by permeating a cell's outer structure in order to denature the proteins within, which may eventually cause the cell structure to be compromised and can result in death of the cell.  As a result, BAC's effectiveness at killing any particular germ is critically dependent on the cellular structure of that germ.

5.      Specifically, BAC is ineffective at killing non-enveloped viruses, certain gram-negative bacteria and spores, as the structure of these germs cannot be readily permeated by BAC.[1]  Studies have found that resistance to BAC-based disinfectants such as Defendants' Products has developed in at least 57 bacteria species, and BAC-resistant genes have been discovered to be developing in up to 76 bacterial strains.

6.      Further, BAC-based disinfectants such as Defendants' Products are ineffective at killing many germs commonly transmitted through human hands, such as rhinovirus (the predominant cause of the common cold in humans), *pseudomonas aeruginosa* and *clostridioides difficile*.  Defendants' Products are also ineffective at killing SARS-CoV-2 ("COVID-19").

7.      Defendants were aware that it is scientifically proven that BAC-based products do not kill 99.99% of germs and that no evidence supports their claim that the Products kills 99.99% of germs, yet they continue to make this efficacy claim to the hundredth digit. Defendants do not claim that their Products kill 99.99% of "some" or a certain number of germs, but rather, by not placing a modifier between the number "99.99%" and the phrase "of germs," Defendants create the clear impression that it has been scientifically proven that their Products kill 99.99% of *all* germs.  Further, neither the front nor back labels of Defendants products contain any disclaimer as to the "Kills 99.99%" representation.

---

[1] Resnick L, Veren K, Salahuddin SZ, Tondreau S, Markham PD. Stability and inactivation of HTLV-III/LAV under clinical and laboratory environments. *JAMA J Am Med Assoc.* 1986;255:1887–1891.

8.     Defendants' Product labels are therefore materially misleading, in that they plainly state, in a manner giving the impression that it has been scientifically proven, that their Products kill 99.99% of germs, when studies show that it does not kill many types of germs. Hundreds of thousands of consumers have purchased these products, particularly during the ongoing COVID-19 pandemic, in the false but reasonable belief the Products have been proven to kill 99.99% of germs and will protect people from disease.   It has not been so proven. Reasonable consumers have been misled.

9.     There is estimated to be somewhere between 100 billion and 1 trillion different microbial species on earth.   The current catalogued species of microbes accounts for approximately 0.001% of germs in existence.   In other words, 99.999% of germs are yet to be discovered and identified.  Defendants have not tested the efficacy of their Products against every one of the approximately 0.001% of catalogued species of germs in existence.  Moreover, no amount of testing during the present time can substantiate the claim that BAC-based hand wipes kill "99.99% of germs."  Defendants know this, experts in the field of microbiology know this, but the reasonable consumer does not know this because they have only read that the Products will "Kill[] 99.99% of germs."

10.     As a result of Defendants' deceptive and misleading practices, Plaintiff and the Class members were induced to purchase the Products, which do not perform as advertised. Defendants have made millions of dollars in fraudulent sales to individuals who Defendants told were receiving a product which had been proven, with a nearly 100 percent degree of certitude, to kill almost every germ.  Defendants' customers did not receive the benefit of their bargain. Defendants' customers paid a price premium by purchasing a Product that kills 99.99% of *some* of the approximately 0.001% of catalogued species of germs in existence, instead of 99.99% of germs broadly.   The Products do not kill the vast majority of the germs in existence.  Instead, BAC-based hand wipes kills a certain, much-smaller subset of germs that have not yet grown resistant to BAC, when applied to the skin and left untouched for a set period of time.

3

**THE PARTIES**

11.     Plaintiff Nancy Leboeuf is a New York citizen residing in Ballston Spa, New York.  Plaintiff purchased a 20-wipe pack of Defendants' Product in the "Tropical Splash" variety at Clifton Park, New York on several occasions within the past year.

12.     Defendant Edgewell Personal Care Company is a Missouri corporation with its principal place of business in Shelton, Connecticut.  Defendant does substantial business, including sales of their Products, in New York state, and in the Northern District of New York specifically.

13.     Defendant Edgewell Personal Care Brands, LLC is a Delaware Limited Liability Company with its principal place of business in Shelton, Connecticut.  Defendant does substantial business, including sales of their Products, in New York state, and in the Northern District of New York specifically.

14.     Defendant Edgewell Personal Care, LLC is a Delaware Limited Liability Company with its principal place of business in Shelton, Connecticut.  Defendant does substantial business, including sales of their Products, in New York state, and in the Northern District of New York specifically.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA) because the amount in controversy in this matter exceeds $5 million as to all putative Class members, inclusive of attorneys' fees and costs, and injunctive relief.  *See* 28 U.S.C. § 1332(d).

16.     This Court has personal jurisdiction over Defendants because the claims alleged by Plaintiff and the Class members arise out of the business activities conducted by the Defendants in the State of New York.

17.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a), because all claims alleged herein form part of the same case or controversy.

18.     Venue is appropriate in the Northern District because, among other things: (a)

4

Plaintiff resides in the Northern District, (b) Plaintiff purchased the products in the Northern District; and (c) many of the acts and omissions that give rise to the claims for relief alleged in this action took place in the Northern District.

**FACTUAL ALLEGATIONS**

19.     Plaintiff is an individual who purchased Defendants' Product in order to protect herself from germs.  The front label of the Product that Plaintiff purchased stated prominently that it "Kills 99.99% of Germs."  An image of the front label of Defendants' Product is included below.



20.     The back label of Defendants' Product contained a second representation, which stated that "Wet Ones Antibacterial Hand Wipes kill 99.99% of germs and wipe away dirt, providing a better clean than hand sanitizers.  They are specially formulated to be tough on dirt and germs, yet gentle on skin, so that you can confidently keep your hands fresh and clean when soap and water are not available."  An image of the back label of Defendants' Product is included below.



21.    Both the representations made on Defendants' front and back labels are false, deceptive, and materially misleading to a reasonable consumer.  No scientific study indicates that BAC-based hand wipes kill 99.99% of germs.  In fact, many scientific studies show that BAC is not effective and killing many prominent and harmful germs, including COVID-19, and that they are less effective than washing one's hands.

22.    BAC, particularly at the concentrations offered in the Products, does not kill many types of germs.  The BAC concentration in commercial disinfectants such as Defendants' Products have been found to be ineffective at killing many strains of bacteria, and resistance to BAC has been measured in at least 57 bacteria species.[2]  Further, BAC-resistant genes have also been found developing in up to 76 bacterial strains, including several *E. coli* strains.[3][4]  This is particularly alarming, as researchers have now determined that likeliest route of human-to-human transmission for antibiotic-resistant strains of E. coli is through contact with unwashed hands.[5]

23.    BAC is known to be ineffective against non-enveloped viruses, certain gram-negative bacteria and spores.[6]  According to the Center for Food Security & Public Health, BAC is ineffective at killing (1) pseudomonads (a type of gram-negative bacteria commonly found in the environment and may be transmitted through hands); (2) chlamydiae; (3) non-enveloped

---

[2] Kampf, G. Adaptive microbial response to low-level benzalkonium chloride exposure. J. Hosp. Infect. 2018, 100, e1–e22.

[3] Gadea, R.; Fernández Fuentes, M.A.; Pérez Pulido, R.; Gálvez, A.; Ortega, E. Effects of exposure to quaternary-ammonium-based biocides on antimicrobial susceptibility and tolerance to physical stresses in bacteria from organic foods. Food Microbiol. 2017, 63, 58–71.

[4] Zou, L.; Meng, J.; McDermott, P.F.; Wang, F.; Yang, Q.; Cao, G.; Hoffmann, M.; Zhao, S. Presence of disinfectant resistance genes in Escherichia coli isolated from retail meats in the USA. J. Antimicrob. Chemother. 2014, 69, 2644–2649

[5] https://www.cnn.com/2019/10/23/health/e-coli-toilet-hygiene-superbugs-scli-intl/index.html#:~:text=Washing%20your%20hands%20is%20the%20best%20way%20to%20prevent%20the,coli.&text=People%20failing%20to%20wash%20their,coli%2C%20according%20to%20new%20research.

[6] Resnick L, Veren K, Salahuddin SZ, Tondreau S, Markham PD. Stability and inactivation of HTLV-III/LAV under clinical and laboratory environments. *JAMA J Am Med Assoc.* 1986;255:1887–1891.

viruses (such as rhinovirus—the predominant cause of the common cold in humans); (4) parvoviruses (DNA viruses transmittable through respiratory secretions); acid-fast bacteria (such as Mycobacteria and some Nocardia); (5) bacterial spores (such as *clostridiodes difficile*, described below); (6) coccidia (causes infections in dogs); and (7) prions (misfolded proteins responsible for several fatal neurodegenerative diseases in humans).[7]

24.    By way of example, Defendants' products are ineffective at killing *pseudomonas aeruginosa*, a gram-negative bacterium commonly transmitted through contaminated hands, equipment, or surfaces.[8]   In 2017, *pseudomonas aeruginosa* caused an estimated 32,600 infections in hospitalized patients and 2,700 deaths.[9]  BAC is also similarly ineffective at killing *clostridioides difficile*, a highly common spore-forming bacteria frequently transmitted through hands.[10]  *Clostridioides difficile* is estimated to cause 55% of all diarrheas , and leads to an approximate 233,900 infections and 12,800 deaths per year.[11]

25.    Further, Defendants' Products are ineffective at killing COVID-19.   Tests conducted on BAC's efficacy in killing COVID-19 showed that a mere 30 seconds of exposure to 80% alcohol was more effective at killing COVID-19 than **30 minutes** of exposure to BAC.[12]  Needless to say, consumers do not wipe their hands with Defendants' Products for 30 minutes at a time.  Defendants' Products are ineffective at killing COVID-19.

26.    In light of the fact that evidence shows that many types of germs are not killed by BAC-based hand wipes, and that the use of BAC-based hand wipes may actually be counter-productive to the goal of killing germs, it appears extremely doubtful that BAC-based hand wipes in fact kill 99.99% of all germs.  Certainly, no study shows that Defendants' Products kill any

---

[7]https://www.cfsph.iastate.edu/Disinfection/Assets/AntimicrobialSpectrumDisinfectants.pdf
[8] *See, e.g.*, https://journals.asm.org/doi/10.1128/am.18.3.299-302.1969
[9] https://www.cdc.gov/drugresistance/biggest-threats.html#pse
[10] https://pubmed.ncbi.nlm.nih.gov/28065332/
[11] https://www.cdc.gov/drugresistance/biggest-threats.html
[12] Rabenau, H.F.; Cinatl, J.; Morgenstern, B.; Bauer, G.; Preiser, W.; Doerr, H.W. Stability and inactivation of SARS coronavirus. Med. Microbiol. Immunol. 2005, 194, 1–6.

given amount of germs such that an exact percentage of germs killed could be stated. Yet, that is exactly what Defendants have done. Defendants made false statements.

27. Plaintiff purchased Defendants' Products in reliance on the representation, believing that it had in fact been scientifically proven that the hand wipes killed 99.99% of all germs. Plaintiff received a Product that was not in fact proven to kill 99.99% of germs. Plaintiff did not get the product that was advertised. Plaintiff was deprived of the benefit of her bargain.

28. Defendants knowingly and willfully engaged in false and misleading advertising. Maria Lovera, then senior brand manager of skin care for Playtex Products, Inc.,[13] wrote in an email that "[t]he 99.99% message is more powerful among consumers than 'antibacterial' or 'germ kill' alone."[14] Defendants, knowing that claiming its Products would "Kill 99.99% of Germs" would result in more sales, made the decision to make that false and misleading representation to consumers, despite also knowing that no scientific evidence existed to substantiate that claim.

29. Defendants' false and misleading labeling is effective, as Plaintiff and other class members were reasonably misled and purchased Defendants' Products at a price premium. Defendants charges a price premium for its' hand wipes because they know that consumers will pay more for a product which promises them protection from virtually all germs.

30. On several occasions within the past year, Plaintiff Nancy Lebouef purchased a 20-pack of Defendants' Wet Ones Antibacterial Hand Wipes in the "Tropical Splash" variety at a Walmart store for a price of $1.97, or approximately $0.098 per wipe.

---

[13] Playtex Products, Inc. was the original manufacturer of the Wet Ones Antibacterial Hand Wipes, and was acquired by Defendants in July of 2007, who then took over the manufacturing, marketing, distribution, labeling, promotion, advertisement and sale of the Products.
[14] https://www.yourlawyer.com/newsinferno/hand-sanitizer-study-questions-effectiveness-claims/

31.     In comparison, a 40-pack of "Mighty Good Sanitize Those Hands Antibacterial Hand Wipes" is also sold at Walmart for $3.12, or approximately $0.078 per wipe.[15]  The Mighty Good hand wipes also feature BAC as its active ingredient, but do not include a claim on its front or back label promising to kill 99.99% of germs.

32.     Likewise, a 40-pack of "Aquarelle Antibacterial Wet Wipes" is sold at the Dollar Tree for $1.25, or approximately $0.031 per wipe.[16]  The Aquarelle hand wipes feature BAC as its active ingredient, but do not include a claim on its front or back label promising to kill 99.99% of germs.

33.     Prior to purchasing Defendants' Products, Plaintiff was aware of these alternatives, and considered purchasing them, but did not do so.  Instead, Plaintiff, as a reasonable consumer acting reasonably under the circumstances, relied upon the "Kills 99.99% of Germs" promise on the labels of Defendants' Products and was misled into purchasing Defendants' Products at a price premium under the false belief that Defendants' hand wipes were more effective at killing germs.

34.     Defendants' representation that their Products "kill[] 99.99% of germs" commands a price premium because consumers are reasonably misled to believe that Defendants' hand wipes are more effective at killing germs than hand wipes which lack a similar statement.  Had Defendants informed its consumers that its hand wipes did not actually kill 99.99% of germs, Plaintiff and other reasonable consumers would not pay a price premium for Defendants' Products, but rather would opt to purchase cheaper hand wipes which do not make that promise.

35.      Plaintiff continues to desire to purchase hand wipes which will actually kill 99.99% of germs.  As such, Plaintiff would purchase Defendants' Products again if Defendants reformulate their hand wipes to actually kill 99.99% of germs.  However, as Defendants' labeling

---

[15] https://www.walmart.com/ip/Mighty-Good-Sanitize-Those-Hands-Antibacterial-Wipes-40-Count/518593772
[16] https://www.dollartree.com/aquarelle-antibacterial-wet-wipes-40ct-packs/326448

is currently false and misleading, Plaintiff cannot rely upon it to determine if or when Defendants' Products are reformulated to actually kill 99.99% of germs.  Accordingly, Plaintiff requires an injunction against Defendants' false and misleading advertising practices, until such a time that Defendants' "Kills 99.99% of Germs" representation is true and accurate.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action on her own behalf and on behalf of the Class members pursuant to the New York Civil Practice Law & Rules § 1002(a).  Plaintiff intends to seek certification of the class defined as follows:

> The New York Class, initially defined as:
> All persons residing in the State of New York who purchased Wet Ones Antibacterial Hand Wipes during the period beginning four years before the date of the filing of this Complaint to entry of final judgment (the "Class").

37.     Excluded from the Classes are: (a) Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families.  Plaintiff reserves the right to amend the definition of the Classes if discovery, further investigation, and/or rulings by the Court dictate that it should be modified.

38.     *Numerosity*. The members of the Classes are so numerous that the joinder of all Class members is impractical.  While the exact number of Class members is unknown to Plaintiff at this time, given the amount of Defendants' brand hand-sanitizer sold in New York and in California, it stands to reason that the number of Class members is at least in the thousands. Class members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information and sales records.

39.     *Commonality and Predominance*.  There are questions of law and fact common to Class members, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.  Whether Defendants' Wet Ones Antibacterial Hand Wipes contain the representation, on the product labels, that the product kills 99.99% of germs;

b.  Whether Defendants' product labeling created the impression among their customers that their Product would kill 99.99% of all germs;

c.  Whether a reasonable person would have read the statement "Kills 99.99% of Germs" and any accompanying language to mean that the Product had been scientifically proven to kill at least that exact percentage of germs;

d.  Whether the Product kills 99.99% of germs;

e.  Whether it has been scientifically proven that the Product kills 99.99% of germs;

f.  Whether Defendants knew or should have known that it had not been scientifically proven that the Product kills 99.99% of germs;

g.  Whether Defendants knew or should have known that the Product does not kill 99.99% of germs;

h.  The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled; and

i.  Whether Plaintiff and Class members are entitled to damages, civil penalties, and/or injunctive relief.

40.    *Typicality*. Plaintiff's claims are typical of those of other Class members because Plaintiff, like the other Class members, purchased Defendants' Products which included a statement that it would kill 99.99% of germs, but would not in fact kill that percentage of germs.

41.    *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class members.  Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously.  Plaintiff and Class members have a unified and nonconflicting interest in pursuing the same claims and obtaining the same relief.  Therefore, all Class members will be fairly and adequately represented by Plaintiff and her counsel.

42.     *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.  Damages for any individual Class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

43.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

(*New York General Business Law § 349 – Deceptive Acts and Practices*)

44.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 43, inclusive, of this Complaint as if set forth fully herein.

45.     Defendants' misconduct is consumer oriented.

46.     Specifically, Defendants represented to consumers, including Plaintiff and the Class members, that its' Wet Ones Antibacterial Hand Wipes would kill 99.99% of germs. Defendants did so by representing on its front and back product labels that its' Products would "Kill[] 99.99% of germs."

47.     This statement, inclusive of any disclaimer, would lead a reasonable consumer acting reasonably under the circumstances to conclude that the hand-sanitizer had been proven through a scientific study to kill 99.99% of germs. That is because the statement included an exact figure for the percentage which went to the hundredth decimal point.  Such an exact number would lead a reasonable person to conclude that a specific number had been calculated, and not that it had been picked out of clean air.

13

48.     The representation that the Product "Kills 99.99% of Germs," inclusive of any disclaimer, is a deceptive act or practice.  It has not been proven in any scientific study that Defendants' Products kill 99.99% of germs.  In fact, it is scientifically proven that BAC-based hand wipes do not kill many types of germs.

49.     Defendants knew that the representation at issue was deceptive when they made it, and/or made the representation recklessly and without regard for its truth. Defendants understood, or should have understood, that no scientific study proved that any specific percentage of all germs would be killed by their Products. Defendants understood the limitations of any studies they conducted, or caused to be conducted, purporting to substantiate the claim that its' Products kill 99.99% of germs.  Defendants understood that their Products were not and could not be tested against every microbial species on Earth, or every catalogued microbial species on Earth.

50.     Defendants also understood, or should have understood, that BAC-based hand wipes do not kill many types of germs.  Defendants understood that reasonable consumers do not have a sophisticated understanding of microbiology and will not know to, or be able to, test the veracity of Defendants' claim that their Products kill 99.99% of germs.  Defendants are the only party in possession of any scientific studies purporting to support the claim on their Product labels.  Defendants did not publicize their studies purporting to support the claim that their Products kill 99.99% of germs.  Defendants did not list any limitations of their study on their Product labels.  Defendants did not place a qualifier between the number "99.99%" and the phrase "of germs," even though they very easily could have placed the word "some" or the number of germs for which the product has been tested between the number "99.99%" and the phrase "of germs."

51.     Defendants intended that Plaintiff and the Class members rely on the representation that their Products "Kill[] 99% of Germs."  The advertisement was placed on the Product for the sole purpose of inducing customers to purchase the product.  Defendants understood that by promising to kill nearly every germ, their hand wipes would be purchased by

14

consumers who trust Defendants and any promises of efficacy contained on Defendants' Products, resulting in greater profits to Defendants than Defendants would otherwise generate from sales of hand wipes.  Defendants understood, or should have understood, that a reasonable person would read the "99.99%" promise to indicate that it was a scientific fact that their Products killed that number of germs.

52.     The representation that the Products "Kill[] 99.99% of germs" is misleading in a material way to reasonable consumers acting reasonably under the circumstances.  Consumers of antibacterial hand wipes purchase them for one reason only: to kill germs.  A claim that the Product kills "99.99% of germs" is a material claim because it conveys information that is important to consumers, namely that the Product is capable of killing nearly all germs, and hence, is likely to affect their choice of, or conduct regarding, the purchase of antibacterial hand wipes.

53.     Due to Defendants' materially deceptive conduct, Plaintiff and the Class members paid a price premium for a product that they otherwise would not have paid had they known that the Product does not kill 99.99% of germs.  Plaintiff and the Class members would not have purchased Defendants' Product at the price that they were sold for, and instead would have purchased less expensive alternatives which did not contain such a statement, had they known that the statement was false.  The statement is, therefore, misleading to consumers in a material way.

54.     Plaintiff and the Class members reasonably relied on the representation to their detriment.  Plaintiff and the Class members believed that the Product would kill 99.99% of all germs.  Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members purchased the Product.  Because Defendants' materially deceptive representation lured Plaintiff and the Class members into purchasing or paying a price premium for the Product, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver hand wipes that kill 99.99% of germs to their consumers.  Defendants denied Plaintiff

and the Class members the product that Plaintiff and the Class members reasonably believed they were purchasing.

55.     As a direct and proximate result of Defendants' violation of the New York General Business Law, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages (or $50 per class member, whichever is greater), treble damages, and punitive damages, as well as attorney's fees and costs.

56.     Plaintiff also brings this action to enjoin the unlawful acts and practices set forth herein.

## <u>SECOND CAUSE OF ACTION</u>

### (*New York General Business Law § 350 – False Advertising*)

57.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 56, inclusive, of this Complaint as if set forth fully herein.

58.     Defendants represented to consumers, including Plaintiff and the Class members, that Wet Ones Antibacterial Hand Wipes would kill 99.99% of germs.  Specifically, Defendants placed an advertisement, or caused to be placed an advertisement, on the front and back product labels of their Product, which stated, "Kills 99.99% of Germs."

59.     These statements, inclusive of any disclaimer, would lead a reasonable person acting reasonably under the circumstances to conclude that the Product had been proven through a scientific study to kill 99.99% of germs. That is because Defendants' "Kills 99.99% of Germs" statement included an exact figure for the percentage which went to the hundredth decimal point. Such an exact number would lead a reasonable person to conclude that a specific number had been calculated, and not that it had been picked out of clean air.

60.     The representation that the Product "Kills 99.99% of Germs," inclusive of any disclaimer, is false.  It has not been proven in any scientific study that the Product Kills 99.99% of Germs.  In fact, it is scientifically proven that BAC-based hand wipes such as the Product do not kill many types of germs.

61.     Defendants knew that the representation at issue was false when they made it,

16

and/or made the representation recklessly and without regard for its truth. Defendants understood, or should have understood, that no scientific study proved that any specific percentage of all germs would be killed by the Product. Defendants understood the limitations of any studies they conducted, or caused to be conducted, purporting to substantiate the claim that the Product Kills 99.99% of Germs.  Defendants understood that their Product was not and could not be tested against every microbial species on Earth, or every catalogued microbial species on Earth.

62.     Defendants also understood, or should have understood, that BAC-based hand wipes do not kill many types of germs.  Defendants understood that reasonable consumers do not have a sophisticated understanding of microbiology and will not know to, or be able to, test the veracity of Defendants' claim that their Product Kills 99.99% of Germs.  Defendants are the only party in possession of any scientific studies purporting to support the claim on their Product labels.  Defendants did not publicize their studies purporting to support the claim that the Product Kills 99.99% of Germs.  Defendants did not list any limitations of their study on its Product labels, even though they could have.  Defendants did not place a qualifier between the number "99.99%" and the phrase "of germs," even though they very easily could have placed the word "some" or the number of germs for which the Product has been tested between the number "99.99%" and the phrase "of germs."

63.     Defendants intended that Plaintiff and the Class members rely on the representation.  The advertisement was placed on the Product for the sole purpose of inducing customers to purchase the product.  Defendants understood that by promising to kill nearly every germ, their Product would be purchased by consumers who trust Defendants and any promises of efficacy contained on Defendants' Product labels, resulting in greater profits to Defendants than Defendants would otherwise generate from sales of hand wipes.  Defendants understood, or should have understood, that a reasonable consumer would read the "99.99%" promise to indicate that it was a scientific fact that their hand wipes killed that number of germs.

64.     The representation that the Product "Kills 99.99% of Germs" is misleading in a

material way to reasonable consumers acting reasonably under the circumstances.  Consumers of antibacterial hand wipes purchase them for one reason: to kill germs.  A claim that the Product kills "99.99% of germs" is a material claim because it conveys information that is important to consumers, namely that the Product is capable of killing nearly all germs, and hence, is likely to affect their choice of, or conduct regarding, the purchase of antibacterial hand wipes.

65.      In addition to containing affirmative misrepresentations regarding the efficacy of the Products, Defendants' advertisement contains material omissions.  Specifically, but without limitation:  Defendants failed to disclose to consumers that their Products have been scientifically proven to kill nearly all germs, and in fact have been proven to not kill certain common germs such as rhinovirus, *pseudomonas aeruginosa* and *clostridioides difficile*.

66.      Due to Defendants' materially deceptive conduct (including both affirmative misrepresentations and material omissions), Plaintiff and the Class members paid a price premium that they otherwise would not have paid had they known that the Product does not kill 99.99% of germs.  Plaintiff and the Class members would not have purchased Defendants' Products at the price that they were sold for, and instead would have purchased less expensive alternatives that did not include a "Kills 99.99% of Germs" statement, had they known that that statement was false.  The statement is, therefore, misleading to consumers in a material way.

67.      Plaintiff and the Class members, as reasonably consumers acting reasonably under the circumstances, reasonably relied on the representation to their detriment.  Plaintiff and the Class members were misled by Defendants into believing that the Product would kill 99.99% of all germs.  Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members purchased the Product.  Because Defendants' materially deceptive representation lured Plaintiff and the Class members into purchasing or paying a price premium for the Product, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver a product that Kills 99.99% of Germs.  Defendants denied Plaintiff and the Class

members the product that Plaintiff and the Class members reasonably believed they were purchasing.

68.     As a direct and proximate result of Defendants' violation of the New York General Business Law, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages (or $500 per class member, whichever is greater), treble damages, and punitive damages, as well as attorney's fees and costs.

69.     Plaintiff also brings this action to enjoin the unlawful acts and practices set forth herein.

### THIRD CAUSE OF ACTION

*(Fraud)*

70.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 69, inclusive, of this Complaint as if set forth fully herein.

71.     Defendants represented to consumers, including Plaintiff and the Class members, that Wet Ones Antibacterial Hand Wipes would kill 99.99% of germs.  Specifically, Defendants placed an advertisement, or cause to be placed an advertisement, on its Product labels, which stated, "Kills 99.99% of Germs."

72.     These statements, inclusive of any disclaimer, would lead a reasonable consumer acting reasonably under the circumstances to conclude that the Product had been proven through a scientific study to kill 99.99% of germs. That is because the statement included an exact figure for the percentage which went to the hundredth decimal point.  Such an exact number would lead a reasonable person to conclude that a specific number had been calculated, and not that it had been picked out of clean air.

73.     The representation that the Product "Kills 99.99% of Germs," inclusive of any disclaimer, is false.  It has not been proven in any scientific study that the Product Kills 99.99% of Germs.  In fact, it is scientifically proven that BAC-based hand wipes such as the Product does not kill many types of germs.

74.     Defendants knew that the representation at issue was false when they made it,

and/or made the representation recklessly and without regard for its truth. Defendants understood, or should have understood, that no scientific study proved that any specific percentage of all germs would be killed by the Products. Defendants understood the limitations of any studies they conducted, or caused to be conducted, purporting to substantiate the claim that the Product Kills 99.99% of Germs.  Defendants understood that their Products were not and could not be tested against every microbial species on Earth, or every catalogued microbial species on Earth.

75.     Defendants also understood, or should have understood, that BAC-based hand wipes do not kill many types of germs.  Defendants understood that reasonable consumers do not have a sophisticated understanding of microbiology and will not know to, or be able to, test the veracity of Defendants' claim that their Product kills 99.99% of germs.  Defendants are the only party in possession of any scientific studies purporting to support the claim on their Product labels.  Defendants did not publicize their studies purporting to support the claim that the Products kill 99.99% of germs.  Defendants did not list any limitations of their study on its Product labels, even though they could have.  Defendants did not place a qualifier between the number "99.99%" and the phrase "of germs," even though they very easily could have placed the word "some" or the number of germs for which the Product has been tested between the number "99.99%" and the phrase "of germs."

76.     Defendants intended that Plaintiff and the Class members rely on the representation.  The advertisement was placed on the product for the sole purpose of inducing customers to purchase the Product.  Defendants understood that by promising to kill nearly every germ, their Products would be purchased by consumers who trust Defendants and any promises of efficacy contained on Defendants' Products, resulting in greater profits to Defendants than Defendants would otherwise generate from sales of hand wipes.  Defendants understood, or should have understood, that a reasonable consumer would read the "99.99%" promise to indicate that it was a scientific fact that the Products killed that number of germs.

77.     The representation that the Products "Kill[] 99.99% of Germs" is misleading in a

material way to reasonable consumers acting reasonably under the circumstances. Consumers of antibacterial hand wipes purchase hand-sanitizer for one reason only: to kill germs. A claim that the Product kills "99.99% of germs" is a material claim because it conveys information that is important to consumers, namely that the Product is capable of killing nearly all germs, and hence, is likely to affect their choice of, or conduct regarding, the purchase of antibacterial hand wipe products.

78.     Due to Defendants' false representation, Plaintiff and the Class members paid a price premium for a product that they otherwise would not have paid had they known that the Product does not kill 99.99% of germs. Plaintiff and the Class members would not have purchased Defendants' Products at the price that they were sold for, and instead would have purchased less expensive alternatives that did not include a "Kills 99.99% of Germs" statement, had they known that that statement was false. The statement is, therefore, misleading to consumers in a material way.

79.     Plaintiff and the Class members reasonably relied on the representation to their detriment. Plaintiff and the Class members believed that the Product would kill 99.99% of all germs. Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members purchased the Product. Because Defendants' false representation lured Plaintiff and the Class members into purchasing and paying a price premium for the hand-sanitizer, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver a product that Kills 99.99% of Germs. Defendants denied Plaintiff and the Class members the product that Plaintiff and the Class members reasonably believed they were purchasing.

80.     Plaintiff and the Class members' reliance on Defendants' representation was a substantial factor in causing this harm. Had Plaintiff and the Class members known that the Products had not been tested against the vast majority of germs in existence, or that BAC-based hand wipes have been proven to not kill many types of germs, Plaintiff and the Class members

would either have not purchased the Product or would only have been willing to pay substantially less for the Product.

81.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages, punitive damages and costs.

## FOURTH CAUSE OF ACTION

*(Unjust Enrichment)*

82.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 81, inclusive, of this Complaint as if set forth fully herein.

83.     By false representing that their Product kills 99.99% of germs, reasonable consumers acting reasonably under the circumstances purchased and/or paid substantially more for Defendants' Products where they otherwise would not purchase the product, or would have been only willing to pay substantially less for the product.  Thus, Defendants were enriched when they sold more of their Products at a higher price than they otherwise would have based on a false representation on their Product labels.

84.     Defendants' enrichment came at the expense of Plaintiff and the Class members, who never received the product that they reasonably believed they were purchasing from Defendants and were not protected from 99.99% of germs.  Plaintiff and the Class members decided to purchase or overpay for a product based on the false belief that they would be protected from 99.99% of germs.  However, Defendants never delivered this product to Plaintiff or the Class members, and never offered to reimburse Plaintiff and the Class members for the product that they actually received as compared to the product they were promised.

85.     Defendants have successfully created a relationship of trust with consumers through decades of successful marketing campaigns and their prevalence throughout New York state and the country more broadly.  Plaintiff and the Class members trust and depend on Defendants to adequately describe the quality of their products, and have no reason to suspect Defendants of wrongdoing absent consumer-driven lawsuits exposing defendants for their

wrongful conduct.  Plaintiff and the Class members have no way of testing the veracity of Defendants' advertisement claims because they are not sophisticated microbiologists and do not have the resources or tools to verify the accuracy of Defendants' representations.  Therefore, Defendants enjoy the benefit of having a close relationship with their customers who are generally powerless to Defendants' marketing tactics.

86.     As a result of the trust placed in Defendants by consumers, Plaintiff and the Class members reasonably relied, to their detriment, on the representation made by Defendants regarding the efficacy of their antibacterial hand wipes.  Plaintiff and the Class members believed that the Products would kill 99.99% of all germs.  Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members trusted Defendants and purchased the Products.  Because Defendants' false representation lured Plaintiff and the Class members into purchasing and/or paying a price premium for the Products, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver a product that kills 99.99% of germs.  Defendants denied Plaintiff and the Class members the product that Plaintiff and the Class members reasonably believed they were purchasing.

87.     Plaintiff and the Class members' reliance on Defendants' representation was a substantial factor in causing this harm.  Had Plaintiff and the Class members known that the Products had not been tested against the vast majority of germs in existence, or that BAC-based hand wipes have been proven to not kill many types of germs, Plaintiff and the Class members would either have not purchased the Product, or would only have been willing to pay substantially less for the Product.

88.     Allowing Defendants to reap the reward of exploiting average consumers who are ignorant of microbiology, especially during the COVID-19 pandemic where consumers have ubiquitously turned to relying on products such as Defendants' to keep their hands clean, would be against equity and good conscience.  Defendants should not be allowed to benefit at the expense of consumers who trust Defendants out of desperation to protect them from serious

illness, and even death.

89.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for relief as follows:

1) Actual damages;

2) Statutory damages;

3) Treble damages;

4) Punitive damages;

5) Restitution;

6) Affirmative injunctive relief mandating that Defendants remove the false advertisements from their product and product packaging

7) Costs of suit and litigation expenses;

8) Attorney's fees; and

9) Such other and further relief as this Court may deem just and proper.


//

//

//

//

//

//

//

//

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself, and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: June 15, 2022.

Respectfully Submitted,

By /s/Thiago M. Coelho
Thiago M. Coelho
Robert Dart
Carolin Shining
Jonas Mann
Jesse Chen
Jennifer Leinbach
(*pro hac vice* applications forthcoming).
Wilshire Law Firm, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
T: (213) 381-9988
F: (213) 381-9989
E: thiago@wilshirelawfirm.com

/s/Daniel A. Schlanger
Daniel A. Schlanger
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net

*Attorneys for Plaintiff and the Putative Classes*