**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────

**NANCY LEBOEUF,** *individually and on behalf of*
*all others similarly situated,*

                                        **Plaintiff,**

        **vs.**                                                **1:22-cv-642**
                                                               **(MAD/CFH)**

**EDGEWELL PERSONAL CARE COMPANY;**
**EDGEWELL PERSONAL CARE BRANDS, LLC;**
**and EDGEWELL PERSONAL CARE, LLC,**

                                        **Defendants.**

───────────────────────────────────

**APPEARANCES:**                           **OF COUNSEL:**

**SCHLANGER LAW GROUP LLP**                **DANIEL A. SCHLANGER, ESQ.**
80 Broad Street, Suite 1301               **EVAN S. ROTHFARB, ESQ.**
New York, New York 10004
Attorneys for Plaintiff

**WILSHIRE LAW FIRM, PLC**                 **JONAS PALMER MANN, ESQ.**
3055 Wilshire Blvd., 12th Floor           **THIAGO COELHO, ESQ.**
Los Angeles, California 90010
Attorneys for Plaintiff

**STINSON LLP**                            **JOHN W. MOTICKA, ESQ.**
7700 Forsyth Blvd. – Suite 1100           **KIERAN M. CORCORAN, ESQ.**
Saint Louis, Missouri 63105               **MEGAN MCCURDY, ESQ.**
Attorneys for Defendants                  **ASHLEY M. CRISAFULLI, ESQ.**

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 15, 2022, Plaintiff commenced this putative class action alleging that Defendants'

claim that their product "Kills 99.99% of Germs" is false and misleading because the active

ingredient, Benzalkonium Chloride, is purportedly "ineffective at killing certain gram-negative

bacteria, bacteria spores, fungi, and many viruses."  Dkt. No. 38 at ¶ 5; *see also* Dkt. No. 1.

Plaintiff alleges claims for violations of the New York General Business Law §§ 349-50, fraud, and unjust enrichment.  *See* Dkt. No. 38 at ¶¶ 47-92.

Currently before the Court is Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 45.

## II. BACKGROUND

Defendant Edgewell Personal Care Company is a Missouri corporation.  *See* Dkt. No. 38 at ¶ 1.  Defendants Edgewell Personal Care Brands, LLC, and Edgewell Personal Care, LLC are both Delaware limited liability companies.  *See id.*  All three Defendants are headquartered in Shelton, Connecticut.  *See id.*

Defendants and their agents manufacture, market, distribute, label, promote, advertise and sell "Wet Ones Antibacterial Hand Wipes" ("Wet Ones" or the "Product") in various sizes, scents and other variations.  *See id.* at ¶ 2.  The active ingredient in Wet Ones is 0.13% Benzalkonium Chloride ("BAC").  The front label of Defendants' Product includes a statement that it "Kills 99.99% of Germs." *Id.*  The back label contains a second statement, which restates the promise of the front label by claiming that "Wet Ones Antibacterial Hand Wipes kill 99.99% of germs and wipe away dirt, providing a better clean than hand sanitizers.  They are specifically formulated to be tough on dirt and germs, yet gentle on skin, so that you can confidently keep your hands fresh and clean when soap and water are not available." *Id.*

Plaintiff is an individual who purchased Defendants' Product in order to protect herself from germs.  *See id.* at ¶ 19.  The front label of the Product that Plaintiff purchased stated prominently that it "Kills 99.99% of Germs." *Id.*  Similarly, the back label of the Product Plaintiff purchased contained the same promise as set forth above.  *See id.* at ¶ 20.

According to the amended complaint, both the representations made on Defendants' front and back labels are false, deceptive, and materially misleading to a reasonable consumer. *See id.* at ¶ 21. "No scientific study indicates that BAC-based hand wipes kill 99.99% of all germs. In fact, many scientific studies show that BAC is not effective [at] killing many prominent and harmful germs, and that they are less effective than washing one's hands." *Id.* Plaintiff alleges that "BAC, particularly at the concentrations offered in the Products, does not kill 99.99% of germs. The BAC concentration in commercial disinfectants such as Defendants' Products have been found to be ineffective at killing many strains of bacteria, and resistance to BAC has been measured in at least 57 bacteria species." *Id.* at ¶ 22 (footnote omitted). "In particular, BAC-resistant genes have been found in several *E. coli* strains. This is particularly alarming, as researchers have now determined that [the] likeliest route of human-to-human transmission for antibiotic-resistant strains of *E. coli* is through contact with unwashed hands." *Id.* (footnotes omitted).

The amended complaint also claims that "BAC is known to be ineffective against gram-negative bacteria, bacterial spores, fungi and many viruses." Dkt. No. 38 at ¶ 24. "According to the Center for Food Security & Public Health, BAC is ineffective at killing, among others: (1) pseudomonads (a type of gram-negative bacteria commonly found in the environment and may be transmitted through hands); (2) chlamydiae; (3) non-enveloped viruses (such as rhinovirus — the predominant cause of the common cold in humans); (4) parvoviruses (DNA viruses transmittable through respiratory secretions); acid-fast bacteria (such as Mycobacteria and some Nocardia); (5) bacterial spores (such as *Clostridioides difficile*, described below); (6) coccidia (causes infections in dogs); and (7) prions (misfolded proteins responsible for several fatal neurodegenerative diseases in humans)." *Id.* at ¶ 24.

By way of example, the amended complaint contends that Defendants' Products are ineffective at killing *pseudomonas aeruginosa*, a gram-negative bacterium commonly transmitted through contaminated hands, equipment, or surfaces. *See id.* at ¶ 25. Studies have found *pseudomonas aeruginosa* to be resistant to BAC at concentrations as high as 0.36 – almost three times higher than in Defendants' Products. *See id.* (footnote omitted). In 2017, *pseudomonas aeruginosa* caused an estimated 32,600 infections in hospitalized patients and 2,700 deaths. *See id.* (footnote omitted). The amended complaint further alleges that BAC is similarly ineffective at killing *clostridioides difficile*, a highly common spore-forming bacteria. *See id.* (footnote omitted). *Clostridioides difficile* is frequently transmitted through contaminated hands, is estimated to cause 55% of all diarrheas, and leads to an approximate 233,900 infections and 12,800 deaths per year. *See id.*

Plaintiff also claims that Defendants' Products are ineffective at killing COVID-19. *See id.* at ¶ 26. "Tests conducted on BAC's efficacy in killing COVID-19 showed that a mere 30 seconds of exposure to 80% alcohol was more effective at killing COVID-19 than **30 minutes** of exposure to 0.1% BAC. Needless to say, consumers do not wipe their hands with Defendants' Products for 30 minutes at a time. Defendants' Products are ineffective at killing COVID-19." *Id.* (emphasis in original).

The amended complaint also notes that as far back as 1958, studies have indicated that BAC is an ineffective skin disinfectant and claims that the use of BAC as a skin disinfectant in hospitals has been associated with numerous bacterial outbreaks or pseudo-outbreaks throughout the United States. *See id.* at ¶ 27. "Accordingly, researchers recommend against using BAC for the sanitation of anything other than 'non-critical surfaces [such] as walls or furniture.'" *Id.* (footnote omitted).

Plaintiff claims that, "[i]n light of the fact that evidence shows that many types of germs are not killed by BAC-based hand wipes, and that the use of BAC-based hand wipes may actually be counter-productive to the goal of killing germs, it appears extremely doubtful that BAC-based hand wipes in fact kill 99.99% of all germs. Certainly, no study shows that Defendants' Products kill any given amount of germs such that an exact percentage of germs killed could be stated. Yet, that is exactly what Defendants have done. Defendants made false statements." *Id.* at ¶ 28.

Plaintiff claims that she purchased Defendants' Products in reliance on their representations, "believing that it had in fact been scientifically proven that the hand wipes killed 99.99% of all germs." *Id.* at ¶ 29. Plaintiff, however, contends that she did not in fact receive a product proven to kill 99.99% of germs and that she was denied the benefit of the bargain she sought. *See id.* Plaintiff claims that Defendants knew that their "99.99% message" was more compelling to consumers than simply stating that the Products are "antibacterial," and that the language on the packaging knowingly misleads consumers in an effort to maximize profits. *See id.* at ¶¶ 30-31.

Plaintiff claims that on several occasions within the last year, she purchased a twenty-pack of Defendants' Wet Ones Antibacterial Hand Wipes in the "Tropical Splash" variety at a Walmart store for the price of $1.97, or approximately $0.098 per wipe. *See* Dkt. No. 38 at ¶ 32. Plaintiff alleges that she "was induced to purchase this product because its front label claimed that it would 'Kill[] 99.99% of germs.'" *Id.*

In comparison, Plaintiff claims that a twenty-pack of "Medi-First Extra Large Antiseptic Wipes" is sold at webstaurantstore.com for $1.49, or approximately $0.0745 per wipe. *See id.* at ¶ 33. The Medi-First hand wipes also feature 0.13% BAC as its active ingredient, but do not

include a claim on its front or back label promising to kill 99.99% of germs.  *See id.*  "Instead, it merely promises to 'decrease bacteria on skin.'" *Id.*

Likewise, a forty-pack of Defendants' Wet Ones Antibacterial Hand Wipes in the "Tropical Splash" variety is sold at Target for $3.59, or approximately $0.09 per wipe.  *See id.* at ¶ 34.  In comparison, a forty-pack of "Mighty Good Sanitize Those Hands Antibacterial Hand Wipes" is sold at Walmart for $3.12, or approximately $0.078 per wipe.  *See id.*  The Mighty Good hand wipes also feature 0.13% BAC as its active ingredient, but do not include a claim on its front or back label promising to kill 99.99% of germs.  *See id.*

Plaintiff claims that, prior to purchasing Defendants' Products, Plaintiff was aware of these alternatives, considered purchasing them, but did not do so.  *See* Dkt. No. 38 at ¶ 35.  Instead, Plaintiff claims that, "as a reasonable consumer acting reasonably under the circumstances, [she] relied upon the 'Kills 99.99% of Germs' promise on the labels of Defendants' Products and was misled into purchasing Defendants' Products at a price premium under the false belief that Defendants' hand wipes were more effective at killing germs." *Id.*  Plaintiff contends that, had Defendants informed its consumers that its hand wipes did not actually kill 99.99% of germs, Plaintiff and other reasonable consumers would not pay a price premium for Defendants' Products, but rather would opt to purchase cheaper hand wipes which do not make that promise. *See id.* at ¶ 36.

Plaintiff notes that Defendants sell two varieties of "Wet Ones Antibacterial Hand Wipes" – "Ocean Bliss" and "Spring Breeze" (the "Nonclaim Products") – which contain BAC as their active ingredient, but which do not include promises that they will kill 99.99% of germs, for roughly the same price as the Products.  *See id.* at ¶ 37.  The Nonclaim Products are distinct from the Products at issue here in that the are formulated with a "Touch of Aloe" and other ingredients

commonly known to provide moisturizing and skincare benefits, while only containing 0.11% of BAC, instead of the 0.13% BAC contained in the Products. *See id.* Therefore, while the Nonclaim Products command roughly the same price as the Products, they do so because consumers associate a separate price premium for products which are formulated with aloe and chamomile. *See id.*

Plaintiff claims that she continues to desire to purchase hand wipes which will actually kill 99.99% of germs and would purchase Defendants' Products again if Defendants reformulate their hand wipes to actually kill 99.99% of germs. *See id.* at ¶ 38. "However, as Defendants' labeling is currently false and misleading, Plaintiff cannot rely upon it to determine if or when Defendants' Products are reformulated to actually kill 99.99% of germs. Accordingly, Plaintiff requires an injunction against Defendants' false and misleading advertising practices, until such time that Defendants' "Kills 99.99% of Germs" representation is true and accurate." *Id.*

## III. DISCUSSION

### A.    Standard of Review

#### 1. *Rule 12(b)(1)*

"Pre-answer motions to dismiss for lack of standing are governed by Federal Rule of Civil Procedure 12(b)(1)." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018). "In order to survive a defendant's motion to dismiss for lack of subject matter jurisdiction, a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015).

When standing is challenged on the basis of the pleadings, the court must "'accept as true all material allegations of the complaint, and must construe the complaint in favor of [Plaintiffs].'" *All. for Open Society Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 227 (2d Cir. 2011) (quotation omitted).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it ..., the plaintiff has no evidentiary burden."  *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted).

Importantly, "[t]o establish standing to obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'"  *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (quotation omitted); *see also Abidor v. Napolitano*, 990 F. Supp. 2d 260, 272 (E.D.N.Y. 2013) ("An action for declaratory judgment does not provide an occasion for addressing a claim of alleged injury based on speculation as to conduct which may or may not occur at some unspecified future date").  "That is, a plaintiff must demonstrate a 'certainly impending' future injury."  *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  To do so, "a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that injury would be prevented by the equitable relief sought."  *Id.*

### 2. Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)

(citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

## B.    Constitutional and Statutory Standing

Defendants argue that Plaintiff fails to establish Article III standing because "(A) she fails to allege an economic injury-in-fact that is concrete and particularized, as opposed to conjectural

and hypothetical; (B) she fails to allege an injury that is not premised on a hypothetical risk of harm; (C) she lacks standing for an injunction; and (D) she has not pled an injury establishing statutory standing." Dkt. No. 45-1 at 16-24.  Plaintiff responds that her allegations that she paid more for the Products than she would have otherwise due to a false advertisement is sufficient to establish the injury-in-fact requirement, and that the injury she has alleged is concrete and particularized, and not conjectural or hypothetical.  *See* Dkt. No. 50 at 25-28.

As the Second Circuit has explained, standing has two components: "constitutional standing, a mandate of the case or controversy requirement in Article III [of the United States Constitution], and prudential considerations of standing, which involve judicially self-imposed limits on the exercise of federal jurisdiction." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 474 (2d Cir. 2013).  It is settled law that constitutional standing requires a plaintiff to demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  On the other hand, "[p]rudential standing includes, *inter alia*, 'the general prohibition on a litigant's raising another person's legal rights' and 'the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches [of government].'"  *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).  "The party invoking federal jurisdiction bears the burden of establishing prudential and constitutional standing[.]"  *Id.*  Further, a plaintiff must have Article III standing in order for the Court to have

subject matter jurisdiction over its claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (describing Article III standing as "the threshold question in every federal case, determining the power of the court to entertain the suit").

In their motion, Defendants rely on, among other cases, *Moreno v. Vi-Jon, LLC*, No. 3:20-cv-14460, 2021 WL 5771229 (S.D. Cal. Dec. 6, 2021), where the district court dismissed the plaintiff's claims for lack of standing. In *Moreno*, the plaintiff brought a class action suit against a manufacturer of hand sanitizers, alleging false or deceptive advertising and related claims. *See id.* at *1. In the complaint, the plaintiff alleged that he would not have purchased or paid as much for the defendant's products if he had known the truth about their effectiveness, *i.e.*, that they do not kill 99.99% of germs. *See id.* at *1-2. The district court granted the defendant's motion to dismiss for lack of standing, holding that the plaintiff "only pled a speculative, conjectural and hypothetical injury." *Id.* at *5. On appeal, the Ninth Circuit reversed, finding that the plaintiff adequately pled an economic injury because he alleged "that he wouldn't have purchased or paid as much for [the defendant's] products if he had known the truth about their effectiveness." *Moreno v. Vi-Jon, LLC*, No. 21-56370, 2022 WL 17668457, *1 (9th Cir. Dec. 14, 2022).

Defendants also rely on *Aleisa v. GoJo Industries, Inc.*, 538 F. Supp. 3d 764 (N.D. Ohio 2021). In that case, the court dismissed the plaintiff's claims for lack of standing where the plaintiffs "claim[ed] they would not have purchased Purell Advanced Hand Sanitizer had Defendant not marketed it as killing over 99.9% of germs," reasoning that, "[a]ssuming the truth of this allegation, Plaintiffs have not suffered an injury. They received fair value for what they paid. They paid for hand sanitizer. They received hand sanitizer. And they did so in an arm's length transaction." *Id.* at 772-73. However, the *Aleisa* court acknowledged that a claim that the

plaintiffs "paid too much for Defendant's hand sanitizer based on its allegedly false claims about the product" could be sufficient to confer standing if it were factually supported. *See id.* at 773.

In this case, Plaintiff alleges that she paid a premium based on Defendants' allegedly false statements about the germ-killing efficacy of its Products and identified two, lower-priced hand wipes with the same active ingredient (0.13% BAC) that do not make similar claims. *See* Dkt. No. 38 at ¶¶ 33-34. This is sufficient to plead an economic injury, which is in turn sufficient to satisfy the requirements of Article III standing. *See Catholdi-Jankowski v. CVS Health Corp.*, ___ F. Supp. 3d ___, 2023 WL 2028926, *3 (W.D.N.Y. Feb. 16, 2023) (holding that the plaintiff satisfied the Article III standing requirements where she alleged that she alleged that she paid a premium for the defendant's hand sanitizer based on false statements about its germ-killing efficacy and identified lower priced hand sanitizers that did not make similar claims); *see also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (holding that "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing"). Accordingly, the Court denies this aspect of Defendants' motion to dismiss.

Defendants also contend that Plaintiff lacks standing to bring a claim for prospective injunctive relief. "'[S]tanding is not dispensed in gross'" and "'a plaintiff must demonstrate standing for each claim he [or she] seeks to press and for each form of relief that is sought.'" *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quotations omitted). "In order to meet the constitutional minimum of standing to seek injunctive relief," a plaintiff "cannot rely on past injury" but instead must show a likelihood that he or she will be injured in the future. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citation omitted). "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera v. Honest*

*Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

In this case, Plaintiff alleges that she has sufficiently alleged standing to pursue injunctive relief based on the following allegation:

> Plaintiff continues to desire to purchase hand wipes which will actually kill 99.99% of germs. As such, Plaintiff would purchase Defendants' Products again if Defendants reformulate their hand wipes to actually kill 99.99% of germs. However, as Defendants' labeling is currently false and misleading, Plaintiff cannot rely upon it to determine if or when Defendants' Products are reformulated to actually kill 99.99% of germs. Accordingly, Plaintiff requires an injunction against Defendants' false and misleading advertising practices, until such a time that Defendants' "Kills 99.99% of Germs" representation is true and accurate.

Dkt. No. 38 at ¶ 38.

As Defendants note, however, elsewhere in her amended complaint Plaintiff alleges that it is scientifically impossible for BAC hand wipes, such as those at issue here, to actually kill 99.99% of germs. *See id.* at ¶¶ 21, 25-29, 51. Morever, Plaintiff contends that it is impossible to make the statement that a product kills 99.99% of germs because there "is estimated to be somewhere between 100 billion and 1 trillion different microbial species on earth" and "[t]he current catalogues species of microbes accounts for approximately 0.001% of germs in existence. In other words, 99.999% of germs are yet to be discovered and identified." *Id.* at ¶ 9. According to Plaintiff, "no amount of testing during the present time can substantiate the claim that BAC-based hand wipes kill '99.99% of germs.'" *Id.*

"'[T]he question of whether a plaintiff seeking injunctive relief for consumer deception will be able to demonstrate standing where, as here, they allege they would buy the products in the future if not mislabeled, is unsettled in this Circuit, and district courts examining the issue have reached divergent conclusions.'" *Catholdi-Jankowski*, 2023 WL 2028926, at *4 (quoting

*Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 205 (W.D.N.Y. 2020)) (collecting cases). "However, 'a ... thorough survey of authority in the Second Circuit suggests that' a plaintiff who alleges an intent to make future purchases of a product only if its advertising or labeling is changed has failed to sufficiently allege future injury for purposes of establishing standing to seek injunctive relief: any case holding otherwise 'is an outlier in the Circuit's jurisprudence.'" *Mancuso*, 454 F. Supp. 3d at 205 (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 238 (S.D.N.Y. 2020)); *see also Duchimaza v. Niagara Bottling, LLC*, No. 21-cv-6434, ___ F. Supp. 3d ___, 2022 WL 3139898, *6 (S.D.N.Y. Aug. 5, 2022) (holding that allegations that the plaintiff "desires to purchase water bottles from Defendant Niagara that are, in fact, 100% recyclable, but cannot rely on Defendant Niagara's representations regarding recyclability" were not sufficient to "plead an injury-in-fact to support injunctive relief," because they "mirror[ed] pleadings that courts in this Circuit repeatedly have held insufficient where a consumer plaintiff has sought to enjoin the further sale of a deceptively marketed product she purchased" and "[a]s these courts have held, allegations that the plaintiff would purchase a product *if* re-engineered or re-marketed does not plead a real or immediate threat of future injury") (emphasis in original).

Here, as in *Catholdi-Jankowski*, this Court agrees with the majority view in this Circuit, and finds that the reasoning of these cases particularly persuasive in this case, where Plaintiff's own allegations are that the product could not be reformulated to meet her standards for purchasing. "In other words, Plaintiff's allegation that she would like to purchase a reformulated hand sanitizer that kill 99.99% of germs is inherently speculative if one also credits her allegations that such a reformulation is not scientifically feasible." *Catholdi-Jankowski*, 2023 WL 2028926, at *5. As such, Plaintiff cannot show a likelihood of future harm because – according to her own amended complaint – she will know that any of Defendants' Products that he is

contemplating purchasing in the future could not possibly have been scientifically proven to kill 99.99% of all germs, as she understands that term.  Therefore, Plaintiff lacks standing to seek injunctive relief and her request for the same is dismissed without prejudice.

Accordingly, Defendants' motion to dismiss for lack of standing is granted in part and denied in part.

**C.    Federal Law Preemption and Primary Jurisdiction**

Defendants contend that Plaintiff's claims are preempted by the Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, because Plaintiff seeks to enforce labeling and testing requirements "'different from or in addition to' the Tentative Final Monograph for Health-Care Antiseptic Drug Products, 59 FR 31402-01 (June 17, 1994)." Dkt. No. 45-1 at 31.  Additionally, Defendants argue that "the question of whether Wet Ones Antibacterial Hand Wipes' use of the active ingredient BAC is 'effective' falls within the FDA's primary jurisdiction." *Id.* (citing 21 C.F.R. § 330.1).

**1. Primary Jurisdiction**

"The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties" and has a "central aim ... to allocate initial decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross-purposes." *Ellis v. Trib. Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quotations omitted).  It "applies where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-59 (2d

15

Cir. 1994).  The Second Circuit has highlighted four factors that a court should consider in

determining whether to apply the doctrine of primary jurisdiction:

> "(1) whether the question at issue is within the conventional
> experience of judges or whether it involves technical or policy
> considerations within the agency's particular field of expertise; (2)
> whether the question at issue is particularly within the agency's
> discretion; (3) whether there exists a substantial danger of
> inconsistent rulings; and (4) whether a prior application to the
> agency has been made."

*Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 506 (2d Cir. 2022) (quoting *Ellis*, 443 F.3d at 82-83).

However, "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," *Ellis*, 443

F.3d at 82 (citation omitted), and the analysis must be performed on a case-by-case basis, *Palmer*,

51 F.4th at 506.  In addition to the *Ellis* factors, the court "must also balance the advantages of

applying the doctrine against the potential costs resulting from complications and delay in the

administrative proceedings." *Id.* (quotation omitted).  "[O]nce a court determines that the doctrine

applies, it has discretion either: (1) to retain jurisdiction or (2) to dismiss the case without

prejudice." *Id.* at 505.

Here, Defendants' argument that the doctrine of primary jurisdiction applies here is

somewhat conclusory and fails to meaningfully address some of the *Ellis* factors.  The Court is

not persuaded that the doctrine of primary jurisdiction applies under the circumstances of this

case.

Notably absent from Defendants' motion is any decision from a court that found primary

jurisdiction would apply to false advertising claims in an analogous case.  Upon review, however,

it is clear that courts throughout the United States have consistently rejected this argument in

cases involving false advertising claims against producers/retailers of BAC antibacterial products.

*See Catholdi-Jankowski*, 2023 WL 2028926, at *7-9 (rejecting the defendants' argument that the

16

primary jurisdiction doctrine precluded the plaintiff's New York General Business Law claims relating to the defendants' BAC antibacterial hand wipes); *Macormic v. Vi-jon, LLC*, No. 4:20-cv-1267, 2021 WL 6119166, *9 (E.D. Mo. Aug. 6, 2021) (holding that, although it is undisputed that the FDA has the authority to regulate the labeling and testing of hand sanitizers and antimicrobial products, the plaintiff's claims "do not turn on determinations that require the expertise of the FDA" but rather "present a 'typical false advertising case well within the province of the courts because allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts'") (quotation omitted); *Mier v. CVS Pharmacy, Inc.*, No. 20-cv-1979, 2021 WL 1559367, *12 (C.D. Cal. Mar. 22, 2021) (same); *Won Kyung Hwang v. Ohso Clean, Inc.*, No. 12-cv-6355, 2013 WL 1632697, *18 (N.D. Cal. Apr. 16, 2013) (same).

The Court agrees with these decisions and finds that the doctrine of primary jurisdiction does not apply here.  It is undisputed that the FDA has the authority to regulate the labeling and testing of hand sanitizers and antimicrobial products.  However, Plaintiff's claims in this case do not turn on determinations that require the expertise of the FDA.  Plaintiff's claims present a "typical false advertising case well within the province of the courts because allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Capaci v. Sports Rsch. Corp.*, 445 F. Supp. 3d 607, 623 (C.D. Cal. 2020) (citation omitted).

Accordingly, this aspect of Defendants' motion is denied.

### 2. FDCA Preemption

Under the Supremacy Clause of the United States Constitution, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (citing U.S. CONST. art. VI, cl. 2).  Federal law may preempt state law in various ways.

Sometimes Congress expressly preempts state law by statute, and other times state law may be impliedly preempted if Congress has occupied an entire field or if a state law somehow conflicts with or otherwise stands as an obstacle to the purpose of a federal law. *See generally Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376-77 (2015); *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018). In general, for a court to conclude that Congress has preempted state law, Congress' intent to preempt — whether express or implied — must be "clear and manifest." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (discussing preemption principles in context of the FDCA).

Again, Defendants' briefing on its preemption argument is not a model of clarity. Defendants appear to allege that the claims are preempted by Section 376r of the FDCA. However, Section 376r does not expressly or impliedly preempt Plaintiff's claims because Plaintiff does not seek to impose additional labeling requirements or testing onto Defendants' Products. Instead, Plaintiff merely seeks to impose requirements identical to the FDCA provisions prohibiting false or misleading product labeling. *See, e.g.*, 21 U.S.C. §§ 352(a), 362(a). Such claims are not preempted under Section 379r(a). *See Souter v. Edgewell Personal Care Co.*, 542 F. Supp. 3d 1083, 1097 (S.D. Cal. 2021) (holding that the plaintiff's allegation that the defendants' product labels are deceptive or misleading under state law are not preempted by Section 379r(a) and noting that "'[t]he FDCA is not focused on the truth or falsity of advertising claims but is instead directed to protect the public by ensuring that drugs sold in the marketplace are safe, effective and not misbranded'") (quotation omitted); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-cv-277, 2016 WL 403497, *10 (N.D.N.Y. Jan. 15, 2016) (finding that false advertising cases "which simply require Defendant to truthfully state the nature of its product" are not

preempted by Section 379r(a)); *Dayan v. Swiss-American Prods., Inc.*, No. 15-cv-6895, 2017 WL 9485702, *4 (E.D.N.Y. Jan. 3, 2017) (holding that preemption did not apply where the defendant "would be held liable for failing to label properly the product's [germ-killing efficacy], a standard identical to the standard established by the FDCA"); *Macormic v. Vi-jon, LLC*, No. 4:20-cv-1267, 2021 WL 6119166, *7-8 (E.D. Mo. Aug. 6, 2021). For this same reason, preemption of Plaintiff's claims is also precluded by the FDCA's savings clause. *See* 21 U.S.C. § 379r(f); *Dayan*, 2017 WL 9485702, at *4.

Further, the fact that Plaintiff's claims may "touch on an area regulated by the FDA" does not warrant preemption of false advertising claims. *See Jovel*, 2013 WL 5437065, at *5. Nor are false advertising claims which arise out of FDA-regulated products considered attempts to enforce the FDCA. *See Macormic*, 2021 WL 6119166, at *7-8. Plaintiff's claims "do not by themselves rely on the FDCA but on state law proscribing false or misleading labels," and her allegations, if proven, "would give rise to recovery under state law even in the absence of the FDCA." *Dayan*, 2017 WL 9485702, at *8. As such, they are not expressly or impliedly preempted by the FDCA. *See id.*; *see also In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 375 (E.D.N.Y. 2010) (refusing to find that the plaintiffs' claims were preempted where the claims "would give rise to recovery even had the FDCA never been enacted").

Accordingly, the Court denies this aspect of Defendants' motion to dismiss.

**D.     New York General Business Law Sections 349 and 350**

As noted, Plaintiff claims that Defendants violated Sections 349 and 350 of the General Business Law by misleading reasonable consumers into believing the Products are capable of killing "99.99% of Germs" (the "Kill Claim").

Defendants contend that Plaintiff's claims under Sections 349 and 350 must be dismissed because (1) Plaintiff has failed to satisfy the statutory standing requirements of the General Business Law; (2) Plaintiff has failed to allege facts establishing Defendants' knowledge of the undisclosed information in support of her claims; (3) Plaintiff has failed to allege facts establishing an injury under the General Business Law; and (4) Plaintiff has failed to plead facts establishing causation.

### 1. Plaintiff has Pleaded an Injury Under Sections 349 and 350

Although the Court has found that Plaintiff has adequately pleaded an injury-in-fact for purposes of Article III standing as to her claim for monetary relief, whether Plaintiff has properly alleged an injury for her claims under the General Business Law requires a separate inquiry.  To plead an injury pursuant to either Sections 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302 (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)).  "In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (citing *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012); *Small*, 94 N.Y.2d at 55-56).  Instead, a plaintiff "must plead something more than the defendant's deception; for example, that 'the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health.'" *Preira*, 885 F. Supp. 2d at 677 (quoting *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007)).

An injury under Sections 349 and 350 therefore may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have if

the defendant did not engage in allegedly deceptive practices.  *See Orlander*, 802 F.3d at 302; *see also Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020).  "A price premium theory requires a plaintiff to 'allege[ ] that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality.'" *Colpitts*, 527 F. Supp. 3d at 577 (quoting *Duran*, 450 F. Supp. 3d at 350).

In *DaCorta v. AM Retail Group, Inc.*, No. 16-cv-1748, 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018), the court noted that a plaintiff successfully pleads injury under the General Business Law where they allege "a connection between the misrepresentation and any harm from, or failure of, the product." *Id.* at *8.  The *DaCorta* court went on to state as follows:

> Such a connection is clear in the Price Premium Cases; the product is marketed as having a unique quality; it is "all natural" or "100% olive oil," or contains real bacon or a product to aid in the absorption and digestion of protein.  This marketing allows the company to charge a premium for the product.  Plaintiff pays that premium and learns that the product does not have the unique quality it was marketed for; it is not "all natural", it does not contain real bacon as a primary ingredient, does not contain lactase, or is not "100% olive oil".  In these instances, there is a definitive connection between the misrepresentation (that the product had a unique quality) and the harm from the product (plaintiff paid a premium for a product without this unique quality).

*Id.*

Here, Plaintiff has clearly alleged the facts necessary to support a price premium theory of injury.  The amended complaint alleges that Defendants' Product is marketed as having a unique quality: that it "Kills 99.99% of Germs."  Moreover, the amended complaint alleges that Defendants charge a price premium for their Product compared to similar products which do not include such claims.  *See* Dkt. No. 38 at ¶¶ 32-34.  Plaintiff further alleges that she was willing to

21

pay more for Defendants' Product over the less expensive similar products because of Defendants' promise that their Product "Kills 99.99% of Germs," whereas the cheaper products made no such promise. *See id.* These facts are sufficient to allege the requisite injury under the General Business Law.

Accordingly, this aspect of Defendants' motion to dismiss is denied.

### 2. Reasonable Consumer Standard

Defendants contend that Plaintiff's General Business Law §§ 349 and 350 claims must be dismissed because a reasonable consumer would not expect the Products to kill "undiscovered germs." Dkt. No. 45-1 at 13-14. Defendants note that Plaintiff argues that "'the current catalogued species of microbes accounts for approximately 0.001% of germs in existence' and 'no amount of testing during the present time can substantiate the claims that BAC-based hand wipes kill 99.99% of Germs.'" *Id.* at 13. Similarly, Defendants contend that a reasonable consumer would not expect the Products to kill non-hand germs, considering that they are labeled and marketed as being "hand wipes." *Id.* at 14-15. The Court agrees.

Section 349 of the New York General Business Law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service." *Id.* § 350. Sections 349 and 350 are both aimed at conduct that is deceptive — *i.e.*, conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). "The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices." *Cline v.*

22

*TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).  "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).  In a consumable goods case, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Id.* at 302.

"To state a claim for false advertising or deceptive business practices under New York ... law, a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quotation omitted).  It is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer" under appropriate circumstances.  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

The reasonable consumer inquiry is an objective one, and "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Id.* at 742.  Defendants contend that a reasonable consumer, viewing the statement "kills 99.99% of germs" in the context of a hand sanitizer label, would understand that it referred to germs and bacteria commonly found on hands.  This argument has been accepted by a number of federal courts considering similar claims.  *See Moreno v. Vi-Jon, LLC*, No. 20-cv-1446, 2023 WL 4611823, *7-8 (S.D. Cal. July 18, 2023) ("Instead, rather than making any compelling case for the court to reconsider its ruling, Plaintiff, ignoring the back label information referencing the front label representations Defendant's Products kill 99.99% of germs, plucks from the universe of all

germs certain pathogens he complains are not killed by Defendant's hand sanitizers.  Yet Plaintiff's allegations are devoid of any actual evidence these pathogens are commonly found on hands.  Among these selectively chosen pathogens, for example, are Cryptosporidium, which is most commonly spread through water and C. difficile, which is shed in feces"); *Catholdi-Jankowski v. CVS Health Corp.*, ___ F. Supp. ___, 2023 WL 2028926, *9 (W.D.N.Y. 2023) ("This Court agrees with the majority view that a reasonable consumer of hand sanitizer products would not understand the phrase 'kills 99.99% of germs' to mean all germs in the universe, known or unknown, and regardless of whether such germs are found on the hands") (citing cases); *Robles v. Gojo Indus., Inc.*, No. 21-cv-928, 2022 WL 2163846, *6 (C.D. Cal. Mar. 16, 2022) ("[The plaintiff] was purchasing a product that was explicitly intended for use on the hands.  In this context, it would not be reasonable to expect that she was purchasing a product that would kill germs that are transmitted through other means, or germs that are not yet known to science"); *Souter v. Edgewell Pers. Care Co.*, No. 20-cv-1486, 2022 WL 485000, *8 (S.D. Cal. Feb. 16, 2022) ("The Court accepts as true that [the defendant's hand wipe products' are ineffective against the diseases listed in Plaintiff's First Amended Complaint and that, taken together, these disease-causing microorganisms comprise more than 0.01 percent of germs.  Based on the representations made on front and back labels for [the hand wipe products], however, the Court finds that a reasonable consumer would necessarily assume that the product kills 99.99% of germs that are transmissible by hand"); *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1133 (S.D. Fla. 2021) (holding that "reasonable consumers would not, upon reading a hand sanitizer label that states the product 'kills 99.99% of germs' assume that this means it kills 99.99% of all conceivable disease-causing microorganisms, regardless of whether they are commonly found on the hands").

This Court agrees with these courts that a reasonable consumer of hand sanitizer would not understand the phrase "kills 99.99% of germs" to mean all germs in the universe, known or unknown, regardless of whether such germs are found on the hands.  As the *Piescik* court explained, "hand sanitizer is called hand sanitizer for a reason.... It defies all logic to assume that a reasonable consumer who purchases hand sanitizer will also expect it to offer protection against illnesses most commonly spread by drinking contaminated water, sexual contact, or by 'taking high doses of antibiotics ... in a healthcare setting.'" *Piescik*, 576 F. Supp. 3d at 1133 (quotation omitted).  This is especially true now, where "'[h]aving lived through almost two years of a global pandemic, a reasonable consumer would be expected to know what hand sanitizer does and does not do.'" *Id.*

In support of his assertion, Plaintiff specifically references several "germs" that Defendants' products are ineffective at killing, including "(1) pseudomonads (a type of gram-negative bacteria commonly found in the environment and may be transmitted through hands); (2) chlamydiae; (3) non-enveloped viruses (such as rhinovirus – the predominant cause of the common cold in humans); (4) paroviruses (DNA viruses transmittable through respiratory secretions); (5) acid-fast bacteria (such as Mycobacteria and some Nocardia); (6) bacterial spores (such as *Clostridioides difficile* ...); (7) coccidia (causes infections in dogs); and (8) prions (misfolded proteins responsible for several fatal neurodegenerative diseases in humans)."  Dkt. No. 38 at ¶ 24.  Defendants' Product, however, is specifically marketed for use on the hands, so only those "germs" commonly found on the hands would be relevant to determining whether a reasonable consumer would be misled by Defendants' marketing.  The courts above all rejected similar allegations, primarily because most of the cited "germs" are not commonly found on or transmitted by the hands.  For example, as to pseudomonads, there are more than 140 species (25

of which are associated with humans) and only 2 species, *P. aeruginosa* and *P. pseudomallei*, produce specific human diseases: glanders and melioidosis. *See Medical Microbiology, 4th ed.*, Ch. 27, *Pseudomonas*, available at https://www.ncbi.nlm.nih.gov/books/NBK8326/ (last visited Aug. 4, 2023). Additionally, *P. aeruginosa* and *P. maltophilia* account for 80 percent of pseudomonads recovered from clinical specimens. *See id.* Of the two, only *P. aeruginosa* is commonly spread by the hands, while *P. maltophilia* "is found in water and in both raw and pasteurized milk." *Id.* Chlamydia is a sexually transmitted, not transmitted by the hands. Additionally, *C. difficile* is "shed in feces." *Moreno*, 2023 WL 4611823, at *9 (citing https://www.cdc.gov/cdiff/clinicians/faq.html#transmitted). Rhinovuses are "spread through the air by coughing and sneezing, [and] close personal contact." *See* CDC, National Center for Immunization and Respiratory Diseases ("NCIRD"), *Rhinoviruses*, available at https://www.cdc.gov/ncird/rhinoviruses-common-cold.html (last visited Aug. 4, 2023). Similarly, paroviruses, as Plaintiff acknowledges, are not transmitted through the hands, but through respiratory secretions. Coccidia, which causes infections in dogs, is most commonly spread by ingesting water or anything contaminated with oocysts shed in the feces of an infected animal. Finally, prions "spread between animals through body fluids like feces, saliva, blood, or urine, either through direct contact or indirectly through environmental contamination of soil, food or water." CDC, *Chronic Wasting Disease (CWD)*, available at https://www.cdc.gov/prions/cwd/transmission.html (last visited Aug. 4, 2023).

As Defendants note in their reply, Plaintiff's entire case is premised on the theory that Wet Ones Antibacterial Hand Wipes does not "kill 99.99% of all germs," including germs not in existence, germs found on surfaces, and germs not transmissible by hand. *See* Dkt. No. 38 at ¶¶ 7, 21, 89. Wet Ones Antibacterial *Hand* Wipes' label contains a picture of a hand, states "apply to

hands" and "keeps hands fresh and clean when soap and water are not available" on the labeling, and mentions the word "hand" three additional times. *See* Dkt. No. 45-2. It is implausible that a reasonable consumer would understand or expect the Product to kill anything other than germs commonly found on hands and preventable by keeping hands clean. Plaintiff all but admits that her "kill 99.99% of all germs" theory of deception is faulty by expressly arguing – for the first time in her opposition to Defendants' motion – the germ kill claim only applies to "all germs known to be transmitted through human hands," an allegation not in her amended complaint.

The implausibility of this theory has been confirmed by the vast majority of courts who have dealt with substantially similar claims. *See Moreno*, 2023 WL 4611823, at *7-8; *Catholdi-Jankowski*, 2023 WL 2028926, at *9; *Robles*, 2022 WL 2163846, at *6; *Souter*, 542 F. Supp. 3d at 1093-94; *Piescik*, 576 F. Supp. 3d at 1133 ("Consumers purchase hand sanitizer, to, well, sanitize their hands. It defies all logic to assume that a reasonable consumer who purchases hand sanitizer will also expect it to offer protection against illnesses most commonly spread by drinking contaminated water, sexual contact, or by 'taking high doses of antibiotics ... in a healthcare setting'"). Viewing the packaging as a whole, Plaintiff has failed to plausibly allege that the kill claim is likely deceive or confuse reasonable consumers.

In her response, Plaintiff inflates the standard for dismissal under the reasonable consumer standard by citing cases where district courts denied motions to dismiss under the reasonable consumer standard because there were disputes over relevant factual issues. *See* Dkt. No. 50 at 16-17 (citing cases). Here, however, there are no fact issues preventing the Court from exercising its common sense in examining the underlying theory of liability, and the Court need not look further than the hand sanitizer cases cited above for license to do so at the motion to dismiss stage. Plaintiff accuses these district courts of engaging in "improper judicial speculation," or

making "improper findings of fact," and characterizes their decisions as "arbitrary" and "defective." *Id.* at 18-19.  Contrary to Plaintiff's characterizations of these decisions, the Court finds that these courts used their common sense in deciding that hand sanitizer products are understood by reasonable consumers to be effective at killing germs commonly found on hands. Because Plaintiff's theory of deception defies common sense, the Court may determine that a reasonable consumer would not find the labeling deceptive "in light of the context of the whole label[.]" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 466 (S.D.N.Y. 2020).  Plaintiff's arguments to the contrary amount to nothing more than an attempt to prevent the Court from using its own judgment and common sense.

In her opposition to Defendants' motion, Plaintiff alleges facts not included in her amended complaint and argues for the first time that Wet Ones Antibacterial Hand Wipes do not kill germs that are transmissible by hand, preventable by keeping one's hands clean, and that those germs make up more than 0.01% of germs found on hands.  *See* Dkt. No. 50 at 14-15.  Plaintiff also adds a Pfizer study that states "hands carry on average 3,200 different germs belonging to more than 150 species." *Id.* at 15 & n.1 (citing Pfizer, *How Clean are Your Hands* (Nov. 13, 2019), available at https://www.pfizer.com/news/articles/how_clean_are_your_hands (last visited Aug. 4, 2023)).  Plaintiff concludes in her opposition that the Product does not kill 9 species of germs and 6% of germs found on hands.  *See id.*  However, these allegations are absent from the amended complaint and must be disregarded because Plaintiff cannot amend her amended complaint through her opposition to Defendants' motion to dismiss.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (affirming dismissal for failure to state a claim when an allegation first appeared in opposition to a motion to dismiss).

Plaintiff further contends that her theory of deception categorically satisfies the reasonable consumer standard because she alleged the germ kill claim to be "literally false." Dkt. No. 50 at 15.  This argument is unpersuasive.  "'[A] district court evaluating whether an advertisement is literally false must analyze the message conveyed in full context[.]'" *Catholdi-Jankowski*, 2023 WL 2028926, at *10 (quoting *Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)).  As set forth above, however, Plaintiff has failed to plausibly allege that the kill claim is false, when considering the fact that it is made in the context of antibacterial hand wipes, and not in reference to germs not commonly found on the hands.  *See id.* (rejecting the plaintiff's claim that the statements "kills 99.99% of germs" was literally false when considered in the context of the product's intended purpose).

Finally, the Court notes that, in an attempt to remedy her theory of deception, Plaintiff argues that she cites to "credible science" to lend her allegations the veneer of scientific plausibility.  *See* Dkt. No. 50 at 12 (citing Dkt. No. 38 at ¶¶ 22-27).  These studies, however, do not render Plaintiff's theory of deception plausible.  None of the sources cited by Plaintiff are specific to Wet Ones Antibacterial Hand Wipes or specific germs found on hands.  Instead, Plaintiff attempts to apply research relating to resistance to BAC in surface bacteria in hospitals, and the effectiveness of BAC in commercial and food industry contexts,[1] and for sterilization of medical and dental instruments[2] to Wet Ones Antibacterial Hand Wipes.  Plaintiff's reliance on

---

[1] A. Pedreira, et al., *A Critical Review of Disinfection Processes to Control SARS-Cov-2 Transmission in the Food Industry* (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7911259/ (last visited Aug. 4, 2023).

[2] E. Acosta-Gio, et al., *Benzalkonium chloride: unacceptable to sterilize or disinfect medical or dental instruments* (Nov. 2001), https://www.researchgate.net/publication/11544195_Benzalkonium_chloride_unacceptable_to_sterilize_or_disinfect_medical_or_dental_instruments (last visited Aug. 4, 2023).

studies of different products and in situations for which the Product was not intended to be used is unpersuasive.

In sum, Plaintiff has not plausibly alleged that an objectively reasonable consumer would likely be misled by the label of the Product. Accordingly, her claims under the GBL are subject to dismissal.

### E.    Fraud

Plaintiff's third cause of action alleges common law fraud. *See* Dkt. No. 38 at ¶¶ 73-84. Defendants argue that this claim must be dismissed based on the economic loss doctrine. *See* Dkt. No. 45-1 at 28-29. Plaintiff disagrees, arguing that her claim is not barred by the economic loss doctrine which does not apply to claims of intentional torts. *See* Dkt. No. 50 at 34-35.

Federal Rule of Civil Procedure 9(b) provides as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To state a claim for common law fraud under New York law, a plaintiff must allege "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Haggerty v. Ciarelli & Dempsey*, 374 Fed. Appx. 92, 94 (2d Cir. 2010). "[C]ommon law fraud claims are subject to the particularity requirements of Rule 9(b)." *Filler v. Hanvit Bank*, 156 Fed. Appx. 413, 416 (2d Cir. 2005). "To satisfy the pleading standard for a misleading statement or omission under Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quotation omitted).

The Court need not determine whether the economic loss doctrine is appropriately applied to claims of fraud under New York law because Plaintiff's claim is subject to dismissal on the merits.  As noted above, to state a common law fraud claim in New York, a plaintiff must allege that there has been a false misrepresentation of a material fact, as well as reasonable reliance thereon.  For all the reasons previously discussed, Plaintiff has not plausibly alleged that her reliance on her interpretation of the statement "kills 99.99% of germs" to mean all germs, regardless of whether they are commonly found on hands, was reasonable.  Plaintiff's fraud claim thus fails for essentially the same reasons as her GBL claims to the extent it is premised on the statement that the hand sanitizer kills 99.99% of germs and Plaintiff has not identified any other benefit from the hand sanitizer that she expected to receive and did not.  *See Catholodi-Jankowski*, 2023 WL 2028926, at \*11 (citing cases); *see also Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018) ("For essentially the same reasons discussed regarding the material representation prong for the statutory claims, Plaintiff fails to plead reasonable reliance"); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 192 (S.D.N.Y. 2016) ("But, for the same reasons that the § 349 claim fails, the fraud claim fails").

Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's common law fraud claim.

## F.    Unjust Enrichment and Restitution

In their motion, Defendants contend that Plaintiff's claim for unjust enrichment must be dismissed because it is duplicative of her other claims.  *See* Dkt. No. 45-1 at 29 (citing cases). Plaintiff has not responded to this argument.  *See* Dkt. No. 50.

In order to state a claim for unjust enrichment in New York, plaintiff must plausibly allege that the defendant was (1) enriched; (2) at the expense of plaintiff; (3) under circumstances

wherein equity and good conscience require the defendant to make restitution. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). While an unjust enrichment claim may be premised on deceptive conduct, "unjust enrichment is not a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Brady v. Anker Innovations Limited*, No. 18-cv-11396, 2020 WL 158760, *12 (S.D.N.Y. Jan. 13, 2020) (dismissing unjust enrichment claim as duplicative of the plaintiff's claims of breach of express warranty and violation of N.Y. GBL § 349 and § 350); *Gonzalez v. Costco Wholesale Corporation*, No. 16-cv-2590, 2018 WL 4783962, *10-11 (E.D.N.Y. Sept. 29, 2018) (dismissing unjust enrichment claim that is duplicative of the plaintiff's breach of warranty claims); *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017) (dismissing unjust enrichment clam that is based on the same allegations as the plaintiff's claims for violation of N.Y. GBL § 349 and § 350, fraudulent concealment, and intentional or negligent misrepresentation).

Here, Plaintiff's unjust enrichment claim relies on the same operative facts as her other claims.  Thus, "to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for [plaintiff's] unjust enrichment claim would necessarily crumble." *Brady*, 2020 WL 158760, at *12.  Accordingly, Plaintiff's unjust enrichment claim is dismissed.  Alternatively, the Court find that Plaintiff has abandoned this claim by failing to respond to this aspect of Defendants' motion to dismiss.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint (Dkt. No. 45) is

**GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 23, 2023
       Albany, New York

Mae A. D'Agostino
U.S. District Judge